## Case No. 12,468.

### SCHMITT et al. v. TROWBRIDGE.

[24 Int. Rev. Rec. 381; 3 Cin. Law Bul. 1029.]

District Court, E. D. Michigan.  1878.

INTERNAL REVENUE — TAX ON MATCHES — ACTION TO RECOVER BACK—VALIDITY OF ASSESSMENT—BURDEN OF PROOF.

[1. The payment of a tax, assessed upon manufactured articles by the commissioner of internal revenue, under protest is not a voluntary payment, and if the owner of the goods appeals to the commissioner, as provided by law, and he decides against him, an action may then be brought to recover back the amount of the tax.]

[2. It is the duty of a manufacturer of matches to see that no box contains more matches than the number indicated by the internal revenue stamp placed thereon, and if some of them do overrun, the commissioner may assess an additional tax thereon, notwithstanding that other boxes of the same lot fall short, so that in the aggregate there is no excess.]

[3. An assessment by the commissioner of internal revenue is prima facie valid, and where he has assessed a certain lot of matches in boxes on the ground that the boxes contain an excessive number of matches, and it appears that some of the boxes did overrun, it will be presumed that all the boxes overran, and the burden is upon the complaining taxpayer to show what boxes did not overrun.]

At law.

BROWN, District Judge (charging jury). This is an action against the collector of internal revenue of this district, and in fact against the government through him as defendant, to recover certain taxes said to have been illegally assessed and collected upon 243 boxes of matches made by the plaintiffs. The law provides that, in all cases where the assessment is disputed, the amount of the tax shall be paid, and upon protest being made and an appeal taken to the commissioner of internal revenue, in case his decision sustains the validity of the tax, a suit may be brought against the collector, and the case submitted to a jury. That is the only way which the law provides for the rehearing of assessments, so that in the end the validity of these assessments may always be submitted to a jury. And I charge you, as requested by plaintiff in his first request, that the payment of the assessment in this case, and under the circumstances proved, is not to be

considered a voluntary one. All that this request means is that where the assessment is illegally exacted under protest, and the appeal properly taken, the plaintiff may sue to recover it back.

The law provides that an appeal shall be taken from these assessments to the commissioner of internal revenue. An appeal was taken in this case from the assessment, and I charge you upon that point that it is sufficient to enable the party to bring this action without the necessity of a further appeal from the collection of the tax.

I may say one word here with regard to the relative position of the parties. It is the plaintiff on the one hand, a manufacturer of matches, and the government upon the other. In cases of this kind, where the government sues or is sued with relation to the validity of a tax, it is almost a matter of course for the government to be represented in an unfavorable light. Now, gentlemen, it is hardly necessary for me to say that that is an erroneous view to take of the relations between a government like this and its citizens. In former times, when taxes were imposed by arbitrary power, and tax collectors were sent from the seat of the government to extort them from the people, complaints of that kind were very frequently and justly made; but in this case you must bear in mind that these taxes are laid by you, through your representatives in Washington, and are collected by your fellow citizens, and it is a matter as much between you and the taxpayers as between the government and the taxpayers. You are here representing the government as much as I am, and you are also representing the people of this government. The people having imposed these taxes, they have also delegated certain agents to collect them, and you, as a portion of the people, are to decide whether the act of these officers was correct or not. It is as much a matter of interest for you, as it is for these gentlemen, that a tax honestly due the government should be honestly collected and honestly paid. It is a matter in which these officers of the government have not the slightest personal interest, no more than any two of you gentlemen, sitting on the jury, and they are entitled as much to your protection as are the two plaintiffs in this case. It is a mere question of fact, were these taxes illegally collected or not?

It appears that the government officers were informed in Louisville, by certain rivals in business of the plaintiffs, that the plaintiffs' boxes containing matches were overrunning, —that the boxes contained more than three hundred matches. The law provides that, if the box shall contain one hundred or less, there shall be a stamp put upon it of one cent; if it contains two hundred or less, a stamp of two cents shall be put upon the box; and for each hundred in excess of two hundred, or for each fraction of one hundred, an additional stamp of one cent shall be imposed; so that it was the business of these plaintiffs to see that none of their boxes contained over three hundred matches, as the stamps they put upon them were stamps appropriate to that amount.

I feel compelled, gentlemen, in the discharge of my duty in this case, to disagree with plaintiffs' counsel in their construction of the law. It was urged that if some of the boxes fell short and some overran, that the jury might strike an average, and say that if the boxes in the different cases did not average over three hundred in the box, there had been no offence committed, and this tax had been illegally laid. I charge you otherwise. It was the duty of the plaintiffs to see that none of these boxes contained over three hundred matches, and for every box that contained over three hundred the commissioner of internal revenue was authorized to impose the extra cent, notwithstanding there were other boxes that fell short of three hundred. The plaintiffs were at liberty to lump them: to fill each box, we will say, without counting them. The government does not require they shall be counted, but it does require there shall not be over three hundred in a box, so the safer way in that case was to do as Mr. Richardson did,—see that the boxes did not contain over three hundred. If they chose to lump them, they should have made sure that the contents of the boxes ran from say 290 to 300 or 295; that is, if there were any chances to be taken, the chances should not be taken against the government.

In determining these tax cases, the government is entitled to certain presumptions. It is a matter of necessity that it should be so. For instance, I charge you that, where the commissioner of internal revenue makes an assessment of this kind, the presumption is that the assessment is correctly made. You may say that where a government officer imposes a tax upon one hundred thousand boxes of matches, for instance, that it is his duty to see that the tax is properly imposed upon each of these hundred thousand boxes. As between man and man, that would seem to be so, but the necessities of the case require a different rule. It would never do to say that, in order to sustain this assessment, it was necessary for the government to prove that each one of these hundred thousand boxes contained more than three hundred matches, because that would necessitate the counting of the entire number of matches in each one of these boxes, which would be entirely impossible. So then it is a fundamental principle of the law in this connection that the commissioner shall lay the tax as he believes it to be just, and that the assessment, when made by him, shall be regarded as prima facie legal, and the burden is thrown upon the plaintiff to show that it is illegal. There is another reason for it. The government cannot know the contents of each one of these boxes, because the most of them have been sold, and are scattered all

over the country. The proofs are lost. The government would not be able, in the nature of things, to prove that each one of those boxes contained over three hundred matches, even if the law required that a count should be made; whereas, on the other hand, the proof is in the hands of the plaintiff to show through his workmen the course of business, and the care he took in packing those boxes and in counting the matches. The facts in relation to these things are all in the hands of the plaintiffs, and for that reason, among others, the law imposes upon them the duty of showing that the assessment was illegally made. It is the duty of the plaintiffs to show that in fact there were not over three hundred matches in these boxes, and it is for the plaintiffs to show how many of these boxes did not overrun. The government has shown that some of the boxes did overrun. They have not shown that all of them did. Now, then, how far does this proof go in that regard? As I said before, it is impossible for the government to count the matches in these boxes; but, where we find one or two or a few boxes in a case overrunning, it is a fair presumption that all the boxes in the case overrun; and, where you find boxes in one case overrunning, it is fair to be presumed that all the boxes in that class overrun; but it would not follow that if other matches were made of a different class, or if they were boxed differently, as if the boxes were differently shaped, or of different sizes, they would all overrun; but here there were one hundred thousand boxes of a certain size, the matches being all of a size, and of a certain quality of timber. And you find, in that number of boxes, that twenty of fifty boxes, indifferently chosen, overran, and none of them underran. It would be a fair presumption that the entire one hundred thousand would overrun, and the commissioner would fairly exercise his discretion in imposing the tax on the whole one hundred thousand. But that evidence may be contradicted by showing that an equal number did not overrun; so, after all, it is a fact for you to say, how much of the tax was illegally collected, and for that amount the plaintiffs are entitled to judgment.

It is claimed here that there were one hundred smaller boxes made first that did not overrun, and that there is no evidence here one way or the other upon that point; that the count related only to the larger class of boxes.

With regard to that, I have this to say: that there is no evidence one way or the other with regard to these overrunning, and in that connection you are entitled to consider on whom lies the burden of proof. The government has assessed these boxes as overrunning. The assessment is prima facie evidence of its own legality,—that is, it is prima facie correct,—and it imposes upon the plaintiffs the burden of showing that the matches in these one hundred boxes did not

overrun. There is no evidence on that point one way or the other, except that some of these were not assessed, and I think it is a question proper to be submitted to the jury, whether these hundred smaller boxes did overrun or not.

The course of business of the factory seems to have been about this: They did not count each box, but once a day each packer was required to count one or two boxes, and that the superintendent went through and examined, every day, the boxes, to see whether they overran or not. It seems that the plaintiffs became aware, in the fall of 1876, that they did overrun, but whether they overran in the smaller boxes or not the testimony leaves us in a very painful state of uncertainty. The government can only rely in that case upon the prima facie validity of the assessment. It is upon the plaintiffs to show that it was illegal. If you shall find here, under all the circumstances of the case, that the boxes contained in these hundred packages did not overrun, then for that amount the plaintiffs would be entitled to a judgment. The same is the fact with regard to the one hundred and twenty-six cases of round matches. It is insisted here by the plaintiffs that they did not overrun; that the round matches were not of the same size as the square matches; and that there is no evidence here that they overran. To that the government replies again that this assessment is prima facie legal, and that the burden is upon the plaintiffs to show it.

Mr. McGrath. I would remind your honor that five out of the seven boxes at Toledo were round matches, and that the five counted there did not overrun; and there is further evidence that the collector examined these eighteen cases at Buffalo, and informed the dealer there to go and sell them; that they were all right; those were round matches.

THE COURT. Those facts are proper for you to consider, gentlemen, in this connection, bearing in mind, however,—and that may become material in your deliberations,—that the burden of proof in these matters rests upon the plaintiffs. It seems that, on the attention of the government officers in Detroit being called to the fact that these matches overran, they visited the factory; that a visit was made by Gen. Trowbridge and Capt. Gavett, the internal revenue agent; and that they there requested Mr. Schmittdiel to make a statement. The manner in which this was done has been criticised by the plaintiffs' counsel, and it is proper for me to comment upon it here. On the one hand, Mr. Schmittdiel says that the statements he made were dictated by Capt. Gavett, although he admits himself that Gen. Trowbridge, the collector, told him to be cautious, and not make the statements if they were not true, and he says that, in

reply to that caution, he said, "I do know," or, "We do know they overran." On the other hand, both Capt. Gavett and Gen. Trowbridge deny that any dictation was used, and assert that the statements made were entirely voluntary on the part of Mr. Schmittdiel. The statements are here, in the handwriting of and signed and sworn to by Mr. Schmittdiel, and they are certainly presumed to be voluntary, the burden being upon the plaintiffs to show that they were involuntary. Now, if you believe Gen. Trowbridge and Capt. Gavett's testimony in this regard, I think that you will find their conduct was entirely correct. I see no opportunity to criticise the way this business was done. On their attention being called to this alleged overrunning, it was entirely proper for them to go to these parties, and ask them to make a statement. There seems to have been no compulsion exercised, their establishment was not seized, and there has been no attempt to impose a penalty upon these parties,—simply an attempt to collect the tax honestly due. Now, if you believe their version of this affair, I charge you their conduct was entirely justifiable and correct, and I see nothing whatever to criticise in that regard. If there was an attempt made at using the power of the government to dictate to this party what he should write down, that would be unjustifiable; but Mr. Schmittdiel says in that connection that Gen. Trowbridge urged him to be cautious in making this statement, and both Gen. Trowbridge and Capt. Gavett deny that any dictation was used whatever, but that the statements were entirely voluntary on the part of Mr. Schmittdiel. As I said before, the burden of proof is upon the plaintiffs to convince you of this fact.

On the 29th day of June, Mr. Schmittdiel made this statement: "Sir: We have manufactured of the kind of matches which we denominate 'No. 7,' and being the same as the 13 cases we shipped to H. Wedekind & Co., Louisville, Ky., in all only 279 cases, containing 144 boxes in each case, and each box containing 300 matches; and that we never represented the said boxes to contain more than 300 matches each, and that we never received or demanded pay for them as containing more than 300 matches each; that we were aware that some of the boxes overran, but that we expected some would fall short. We have sold this class of matches (No. 7) to the following parties: H. Wedekind, Louisville, Ky.; Granger & Co., Buffalo, N. Y.; W. J. Benedict, Milwaukee. Wis.; Kummel & Norris, Milwaukee, Wis.; Jacob Wellaur, Milwaukee, Wis.; and Matthews, Schaunsenbach & Co., Toledo, Ohio; and we have only nine cases of said matches left. We commenced the manufacture of matches about the year 1871, and in 1872 our establishment was destroyed by fire, and in 1873 we resumed operations. There is no other brand of our matches except No. 7, which we are aware of, that the boxes contain, or have contained, more matches than was represented by our stencil and by the amount of revenue stamps thereon."

It seems that on the same day, thinking that his statement was not exactly correct, he made another statement, in which he says: "Sir: We have manufactured matches as follows: Since March 12, 1877, that being the date on which we resumed manufacturing, 3,325 cases No. 9 matches, 3 gross each," etc. And he adds, Detroit, June 30th, the following day: "We were aware that some of these boxes overran. We were also aware that many fell short of the number represented by the stamps on the boxes, and we felt confident that there were no more matches in the entire cases than the stamps indicated." In other words, they seek to justify themselves by saying that the average was no greater than 300 in the box. On consulting counsel, they made another statement, on the 2d day of July, in which they say: "These matches were manufactured during the year 1876, some of them early in the year, and others in the fall. It was our custom at times to ourselves count a box of a particular lot, to ascertain how they are running, and in the fall of last year we made the discovery that a particular batch of these matches did overrun, and we immediately gave instructions to our packers to put a less number in the boxes. It is impossible to count each box of matches, for if we did so the counting would cost several times more than the total price received for the matches." That is entirely true, gentlemen, that the counting of each one of these boxes would undoubtedly make them cost more than they would realize upon each box; at the same time, it is their duty, if they do not count each box, to see that the boxes do not overrun, and if there is any loss it should be a loss to them, and not a loss to the government in their overrunning.

I believe I have covered all the material points in this case, and all the requests to charge, except as I have given the plaintiffs' requests. I decline to give them.